IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARMEN SCICCHITANO, | No. 4:25-CV-00650 |
| Plaintiff, | |
| v. | (Chief Judge Brann) |
| JAMES WILLIAMS, SR., *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

OCTOBER 2, 2025

I.  BACKGROUND

On April 11, 2025, Plaintiff, Carmen Scicchitano, ("Scicchitano"), filed a three-count complaint against Defendants, James Williams, Sr. ("Williams"), Former Officer David Donkochik ("Donkochik"), Police Chief Christopher Buhay ("Buhay") Mount Carmel Borough ("Mount Carmel"), and Mount Carmel Police Officers John/Jane Doe 1–2 ("John/Jane Doe").[1]  The counts of the complaint included a 42 U.S.C. § 1983 ("Section 1983") claims for first amendment violations, a Section 1983 claim for manufacturing and fabricating evidence in violation of Mr. Scicchitano's Fourteenth Amendment due process rights, and a state malicious prosecution claim.[2] However, on June 24, 2025, all parties agreed to dismiss by stipulation the Section 1983 claim relating to first amendment violations.[3]

---

[1]  Doc. 1.
[2]  *Id.*
[3]  Doc. 19.

On June 24, 2025, Williams filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The motion is now ripe for disposition; for the reasons that follow, it is denied.

## II. DISCUSSION

### A. Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), courts dismiss a complaint, in whole or in part, if the plaintiff fails to "state a claim upon which relief can be granted." Following the landmark decisions of *Bell Atlantic Corp. v. Twombly*[4] and *Ashcroft v. Iqbal*,[5] "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[6] The United States Court of Appeals for the Third Circuit has instructed that "[u]nder the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps": (1) "take note of the elements the plaintiff must plead to state a claim"; (2) "identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth"; and (3) "assume the[] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."[7]

---

[4] 550 U.S. 544 (2007).
[5] 556 U.S. 662 (2009).
[6] *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).
[7] *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal quotations and citations omitted).

B. **Facts Alleged in the Complaint**

The facts alleged in the complaint, which this Court must accept as true for the purposes of this motion, are as follows.

Carmen Scicchitano was a member of the Mount Carmel Fire Company, as was Defendant Williams—the then appointed President of the department.[8] On April 22, 2018, Scicchitano was picking up his grandson from his home, which is near the fire company's headquarters.[9] While on the street between the home and the fire headquarters, Scicchitano recorded members of the department who were near the garage doors in order to "gauge the siren levels."[10] In that recording, Williams could be heard harassing and threatening Scicchitano's son.[11] After a consultation with an attorney,[12] Scicchitano reported the conduct—and provided the recording—to the Governor's Office of Homeland Security after it was requested.[13]

Several days later, Williams reported to officers Buhay and Donkochik that Scicchitano had recorded him without his permission and sent the recording to the Governor's Office.[14] This led to the officers initiating and charging Scicchitano with felony wiretapping charges in state court.[15] Scicchitano alleges that both Officers

---

[8]  Doc. 1 ¶¶ 7, 14.
[9]  *Id.* at ¶ 13.
[10] *Id.*
[11] *Id.* at ¶¶ 13, 15.
[12] That same attorney had previously informed Williams in 2016, that Scicchitano "was constitutionally-permitted to photograph in public." *Id.* at ¶ 15.
[13] *Id.* at ¶ 15.
[14] *See id.* at 16.
[15] *Id.* at ¶¶ 15–16.

Buhay and Donkochik were aware that the recording was a constitutionally protected activity under the First Amendment of the U.S. Constitution.[16] He also says that during the state proceedings the recording was edited to cut out parts that showed that the recording took place in public and was relating to a public official.[17] Additionally, Williams claimed that the garage doors to the fire department were closed at the time the recording took place—meaning he alleged that the recording was not made in public.[18]

Further, in November 2018, Officer Donkochik acknowledged that the state wiretapping charges were meritless, but told Scicchitano that he "did not give a fuck and that the judge was in his pocket."[19] At this meeting Officer Donkochik also physically threatened Scicchitano.[20] Officer Donkochik proved to be incorrect, as six years later, on December 2, 2024, all charges were dismissed against Scicchitano.[21] However, that criminal case was the basis to remove Scicchitano as a member of the fire department.[22] Scicchitano alleges that practices like those

---

[16] *Id.* at ¶ 17.
[17] *Id.* at ¶ 19.
[18] *Id.*
[19] *Id.* at ¶ 21.
[20] *Id.* It should be noted that in an unrelated matter regarding use of excessive force when arresting people as an officer, Donkochik pled guilty to conspiracy to deprive rights under color of law in violation of 18 U.S.C. § 241 before this Court. Press Release, U.S. Atty's Off., M.D. Pa., Former Mt. Carmel Borough Police Officer Pleads Guilty to Conspiring to Violate Civil Rights (Mar. 14, 2025), available at https://www.justice.gov/usao-mdpa/pr/former-mt-carmel-borough-police-officer-pleads-guilty-conspiring-violate-civil-rights [https://perma.cc/GRV3-JZBH]. He was charged with two other officers from the Mt. Carmel Borough Police Department. *Id.*
[21] Doc. 1 at ¶¶ 18–19.
[22] *Id.* at 20.

employed against him in his case were "a custom and de facto policy" in the station "of allowing criminal police officers to engage in malicious prosecutions with manufactured evidence."[23]

### C. Analysis

Scicchitano initiated the instant suit to recover compensatory and punitive damages for the alleged violation of his Fourteenth Amendment due process rights and for state malicious prosecution. The former claim is accordingly brought under Section 1983. Defendant Williams' Brief in Support of his Motion to Dismiss highlights three tenants of reasoning for why the complaint should be dismissed: (1) Plaintiff's failure to plead facts supporting the claim that Williams was acting under the color of law, (2) Plaintiff's allegation that the charges were dismissed before trial causes his Fourteenth Amendment claim to fail, and (3) Plaintiff's failure to plead facts supporting the claim that proceedings were initiated by Williams as required for a state malicious prosecution claim.[24] Additionally, Williams offers an exhibit—the affidavit of probable cause in the state proceedings against Scicchitano—to be considered along with his motion to dismiss.[25] The Court begins by addressing whether it will consider the exhibit and will then address each tenant of Williams' brief.

---

[23] *Id.* at ¶ 31.
[24] Doc. 24.
[25] Doc. 23.

5

### 1.    Consideration of the Affidavit of Probable Cause

When deciding a motion to dismiss, a court generally considers only the allegations in the complaint, exhibits attached thereto, and facts of public record.[26] Normally, to consider anything beyond those sources, a motion to dismiss must be converted to a motion for summary judgment.[27] But consideration of materials outside the complaint is not completely barred on a 12(b)(6) motion. Courts may consider any documents that are integral or explicitly relied upon in the complaint.[28] "However, before materials outside the record may become the basis for a dismissal, several conditions must be met."[29] "For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."[30] It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document.[31]

In this matter, this Court finds that these conditions have not been met. As Williams points out in his brief, the reasoning underlying the exception to the general rule that consideration is restricted to the complaint and its attachments is that "the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here the plaintiff has actual notice ... and has

---

[26] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).
[27] *See* Fed. R. Civ. P. 12(d).
[28] *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).
[29] *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).
[30] *Id.*; *see also Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004); *Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001).
[31] *Faulkner*, 463 F.3d at 134.

relied upon these documents in framing the complaint."[32] Here, there is absolutely no evidence provided in the complaint, nor in Williams' briefing, that Scicchitano had any form of notice of the affidavit of probable cause. Additionally, as Williams notes, there is no mention or allusion to the affidavit in the complaint. Therefore, there is no indication that there was any reliance upon the affidavit in framing the complaint, and there is also no evidence of the affidavit being integral to any claim made by Scicchitano.

Further, Scicchitano would almost assuredly dispute the accuracy of the document as the basis of the criminal proceedings. After all, he alleges that Williams' connection to the Officers was a pervasive basis for the prosecution and that the Defendants acted in concert.[33] In sum, none of the conditions required to consider materials outside of the pleadings have been met and the primary problem of actual notice of outside attachments remains front and center. Consequently, the Court will not consider Defendant's attachment.[34]

---

[32] *Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) (internal quotations omitted) (quoting *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir.1993)).

[33] The Court does note that the complaint could have been clearer on this point. Nevertheless, based on what was pled, an argument regarding the veracity of the affidavit as the ultimate basis behind the prosecution is near certain.

[34] Even if the Court did consider the affidavit of probable cause as a public record—which is arguable—it would not change the denial of the motion to dismiss. *See Kowlesar v. City of Newark*, No. 22CV829 (EP) (JRA), 2022 WL 17751377, at *5 (D.N.J. Dec. 19, 2022); *Schmidt*, 770 F.3d at 249–50; *cf. Sanogo v. Univ. of Delaware*, No. CV 24-00750-RGA, 2025 WL 1425803 (D. Del. May 16, 2025) (finding that an affidavit of probable cause could be considered but that "to the extent that the facts alleged in the complaint differ from the facts in the affidavit, I take the facts in the complaint as true and view them in the light most favorable to the Plaintiff").

### 2. Section 1983

Section 1983 provides a procedural vehicle for private plaintiffs to enforce the Constitution when they suffer violations under color of state law.[35] So to plead a Section 1983 claim, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[36] Both of these requirements are independent and failure to satisfy either can bar recovery.[37] Defendant Williams argues that Scicchitano has failed to satisfy either element.

#### a. Color of State Law

Only state action—that is, action taken under the color of state law—is actionable via a Section 1983 suit.[38] The test for whether an individual is a state actor asks if there is "such a close nexus between the State and the challenged action' that seemingly private behavior may be fairly treated as that of the State itself."[39] This does not require a defendant to be an officer or paid employee of the State.[40] Rather, "[p]rivate persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute."[41] Overall, the judicial

---

[35] *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002).
[36] *West v. Atkins*, 487 U.S. 42, 48 (1988).
[37] *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 930 (1982); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970).
[38] *Lugar*, 457 U.S. at 929.
[39] *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted) (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).
[40] *Lugar*, 457 U.S. at 941 (citing *United States v. Price*, 383 U.S. 787, 794 (1966)).
[41] *Id.*

obligation is to "assure that constitutional standards are invoked when it can be said that the State is responsible for the specific conduct of which the plaintiff complains."[42] As such, it is often pointed out that Section 1983 is interpreted liberally.[43]

The United States Court of Appeals for the Third Circuit has said that there are three tests to determine whether state action exists:

> (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the [s]tate has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.[44]

Here, the facts alleged in the complaint establish that Williams is a state actor under either the second or third tests.[45] Because these tests are set out ambiguously, explanations or examples of each seem appropriate. In regard to the second test, the Supreme Court in *Adickes v. S.H. Kress & Co.* found that a conspiracy between a private party and a state official to violate a constitutional or lawful right constituted

---

[42] *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, (2001) (internal quotations omitted) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)). Or as the Supreme Court has also put it "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic*, 313 U.S. 299, 326 (1941).
[43] *See Valle v. Stengel*, 176 F.2d 697, 702 (3d Cir. 1949).
[44] *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations omitted) (citing *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995)).
[45] It is important to note that these tests are discrete. This means that if an actor passes one, they will be a state actor—even if they would fail the other two. *See Mark*, 51 F.3d at 1142; *Cretan v. Newport Twp.*, No. 3:24-CV-00097, 2025 WL 392492, at *4 (M.D. Pa. Feb. 4, 2025).

state action under Section 1983.[46] Scicchitano has pled—admittedly in less that idyllic detail—that Williams along with the officers conspired to bring meritless criminal charges against him. Assuming these allegations as true, that is analogous to *Adickes* and these allegations are sufficient to survive a motion to dismiss.[47]

The third test—joint participation—is somewhat analogous to the second. However, the Supreme Court has stated that under this test, a court must ask "*first* whether the claimed constitutional deprivation resulted from the exercise of a right or privilege having its source in state authority; and *second*, whether the private party charged with the deprivation *could* be described in all fairness as a state actor."[48] In this matter, the first prong of this test is easily met as the claimed constitutional deprivation arose from a prosecution—an action of pure state authority.[49] To determine whether it is fair to find that Williams is a state actor, courts look to how much the individual relied on governmental assistance, whether the actor was performing a traditional governmental function, and whether the injury that was alleged is aggravated in some way by governmental authority.[50] Here, it is

---

[46] *Mark*, 51 F.3d at 1142 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)).
[47] Additionally, the judicial objective mentioned above could only be achieved by allowing the complaint to move forward. The complaint suggests that the officers, Borough, and Williams acted as one—using their titles as state actors—to further a meritless prosecution in the name of the State. If true, these allegations show an injury caused by the conduct of the State and its agents. *See Valle v. Stengel*, 176 F.2d 697, 702 (3d Cir. 1949)
[48] *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 620 (1991) (emphasis added) (citations omitted).
[49] *See id.* at 620 (explaining how peremptory challenges have their source in state authority).
[50] *Mark*, 51 F.3d at 1143 (citing *Edmonson*, 500 U.S. at 621–22).

alleged that Williams worked alongside the officers to manufacture a case against Scicchitano. If true, this is an instance of depriving a right with the "overt, significant assistance of state officials."[51]

Additionally, pursuing a criminal conviction is a traditional function of the government and allowing meritless cases to be prosecuted under the state's name—based largely on animosity—would hamper trust in the criminal justice system.[52] Combined, this leads to the conclusion that it would be fair to find that Williams is a state actor. Therefore, both elements of this third test have been satisfied.[53] Given that is the case, Scicchitano has sufficiently pled allegations to survive a motion to dismiss on the issue of whether Williams was a state actor under these circumstances.[54]

---

[51] *Edmonson*, 500 U.S. at 622.

[52] While this is not the aggravation of an injury like the one mentioned by race discrimination in *Edmonson*, it is without a doubt an injury that we should take all steps to avoid causing. *See id.* at 628.

[53] Importantly, I do not hold that Williams is a per se state actor at this time. I do not have to make a finding on the matter at the motion to dismiss stage. I only need to determine if the plaintiff has plausibly pled that Williams is and that is solely what I have found.

[54] The instant action is distinguishable from the case of *McCracken v. Blei* that appears often in Williams' briefing. *See McCracken v. Blei*, No. 21-CV-2187, 2022 U.S. Dist. LEXIS 13825 (E.D. Pa. Jan. 26, 2022). While I do not dispute that reporting a crime or assisting in a related police investigation does not transform a private citizen into a state actor, this case involves an actor who has done more. *Id.* It is true that Scicchitano alleges that Williams reported a potential crime and participated at least at the beginning of an investigation into it, however Scicchitano also pled that Williams had continued involvement in the manufacturing of the criminal case over the course of six years. *See* Doc 1 ¶ 19. This further allegation of involvement is enough in this Court's eyes to deviate from that ruling and find that Scicchitano has sufficiently plead that Williams was a state actor. Discovery will bear out whether that will stand up over time.

### b.    Violation of a Constitutional Right

The second requirement for a Section 1983 claim is that "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States. . . ."[55] Both parties agree that fabricating evidence is a violation of due process.[56] However, Williams argues that for a fabricated evidence claim under the Fourteenth Amendment to be valid, the Plaintiff's prosecution must have culminated in a trial.[57] This is patently untrue. For support for his assertion, Williams points to the Third Circuit's statements in *Black v. Montgomery County* that a "stand-alone fabrication of evidence claim can proceed if there is no conviction" and that the central harm of concern in fabrication cases is "corruption of the trial process"[58] However, he notably ignores the statement several pages later that there is "no distinction between fabricated evidence leading to a wrongful conviction and wrongful criminal charges."[59] The next sentence of the opinion provides even more conclusive evidence that Williams argument is misguided: "[W]e repeatedly referred to the injury of falsified evidence leading to wrongful initiation of prosecution."[60]

---

[55] *West v. Atkins*, 487 U.S. 42, 48 (1988).
[56] *Black v. Montgomery Cnty.*, 835 F.3d 358, 370 (3d Cir. 2016) (quoting *United States v. Agurs*, 427 U.S. 97, 104 (1976).
[57] If true, this would be fatal for Scicchitano's 1983 claim, given that he admits that all charges against him were dropped prior to trial. Doc. 1 ¶ 18.
[58] *Black*, 835 F.3d at 369–70.
[59] *Id.* at 370.
[60] *Id.* A final nail in Williams' proverbial coffin on this point comes at the end of this paragraph when the Court says that "the harm of the fabrication is corrupting *regardless of* the outcome at trial or *the particular time in the proceeding that the corruption occurs*." *Id.* at 371 (emphasis added).

12

These passages make it abundantly clear that there is no requirement that a plaintiff went to trial for a fabricating evidence claim to be successful. Given that Scicchitano's lack of trial is not a bar and both parties agree that the fabricated evidence claim is a violation of due process rights, the second Section 1983 requirement is also met. Accordingly, Williams' motion to dismiss the Section 1983 claim is denied.

### 3. State Malicious Prosecution

The Court next addresses the state malicious prosecution claim against Defendant Williams. Under Pennsylvania law, to state a claim for malicious prosecution the Plaintiff must plead "(1) that the defendant instituted criminal proceedings against the plaintiff, (2) without probable cause, (3) with actual malice, and (4) that the criminal proceeding terminated in the plaintiff's favor."[61] Because Defendant Williams' Brief in Support focuses solely on the first requirement, I will focus mainly on that element and touch briefly on the preceding three.

Individuals who are not police officers—like Williams—can be liable for initiating criminal proceedings in only limited circumstances.[62] This Court has held

---

[61] *Burke v. Kubicek*, 264 A.3d 391 (Pa. Super. Ct. 2021) (*citing Kelley v. General Teamsters, Local Union* 249, 518 Pa. 517, 544 A.2d 940, 941 (Pa. 1988)); *Tice v. Prisk*, No. 4:23-CV-00823, 2023 U.S. Dist. LEXIS 191131 (M.D. Pa. Oct. 24, 2023).

[62] *Tice*, 2023 U.S. Dist. LEXIS 191131, at *7. As this Court recently stated, "In either circumstance, the actions of the private person preclude the officer from exercising his own discretion in deciding to carry out the prosecution." *See id.*

13

that there are two principal circumstances/theories where a non-officer can be found to have initiated criminal proceedings:

> either (1) the private person's desire to have the proceeding initiated was the determining factor in the commencement of the prosecution, for example, through urging officers to prosecute the case; or (2) the public official acted upon the person's false information in carrying out the arrest.[63]

Scicchitano has alleged both theories in his complaint and both theories are sufficient to allow the claim to survive. The former theory is supported by Scicchitano's allegations and implication that the basis for the charges against him was mainly Williams' desire to pursue criminal charges against him.[64] The latter theory is supported by allegations that the officers arrested and charged him based on Williams false statements that wiretapping had occurred and that the recording took place while not in public.[65]

Williams strongly advances an argument that the relevant officers maintained discretion in deciding whether to prosecute. But this flies in the face of settled doctrine. When an officer acts on false information provided by a non-public actor, "an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information."[66]

---

[63] *Id.* (internal quotations omitted); *see also Griffiths v. CIGNA Corp.*, 988 F.2d 457, 464 (3d Cir. 1993).
[64] Doc. 1 at ¶ 12.
[65] *Id.* at ¶ 19.
[66] *Braswell v. Wollard*, 243 A.3d 973, 979 (Pa. Super. Ct. 2020).

This is precisely what Scicchitano has alleged, which is sufficient to satisfy the first element of a malicious prosecution claim at this early stage in the litigation.[67]

It is often the case that the three remaining elements of a prima facie case of malicious prosecution somewhat bleed together.[68] Rather than describe them in great detail,[69] it suffices to say that "every single element of the test for establishing a prima facie case of malicious prosecution is satisfied if a lie was told to law enforcement officials—if a defendant intentionally provided false information to law enforcement officials."[70] As previously stated, that is just what Scicchitano has pled in his complaint. The allegation that Williams knowingly lied to the Defendant officers about both the recording being in public and the alleged illegality of the recording satisfies all four of the elements of malicious prosecution claim.[71] Therefore, the motion to dismiss the state malicious prosecution claim as to Defendant Williams is also denied.

---

[67] For an example of a case with a similar disposition on this issue, *see* Tice, 2023 U.S. Dist. LEXIS 191131, at *7–8.

[68] *Burgos v. Philabundance*, No. 02978, 2015 Phila. Ct. Com. Pl. LEXIS 286, at *9–10 (Phila. Cnty Ct. of Comm. Pleas, Sept. 14, 2015), *aff'd sub nom. Burgos v. Morgan, Lewis & Bockius, LLP*, 160 A.3d 244 (Pa. Super. 2017) (unpublished).

[69] For an expansive discussion of the remaining elements, as well as a similar application as would be applied here, *see Tice*, 2023 U.S. Dist. LEXIS 191131, at *7.

[70] *Id.* at *8.

[71] *Id.* at *12.

## III. CONCLUSION

For the above stated reasons Defendant Williams' motion to dismiss pursuant to Rule 12(b)(6) is denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge
